IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT RUSSELL SPENCE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 2:11-cv-1280 |
| | ) | |
| | ) | Judge David Stewart Cercone |
| ALISA N. CARR, *et al.,* | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| | ) | ECF No. 33 |
| Defendants. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

### I.   RECOMMENDATION

The Court respectfully recommends that the Motion to Dismiss filed by Defendant Alisa
N. Carr (ECF No. 33) be granted and the claims against her be dismissed with prejudice.  It is
further recommended that this civil action be dismissed with prejudice against the remaining
Defendants for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

### II.   REPORT

#### A.   Factual Background/Procedural History

This civil action was commenced on October 5, 2011 by the filing of a motion for leave
to proceed *in forma pauperis.*   That motion was denied as the appropriate supporting
documentation was not filed with the motion.  (ECF No. 2.)  Thereafter, on October 18, 2011,
the $350 filing fee was received by the Clerk of Court and the Complaint was docketed.[1]  (ECF

---

[1] Plaintiff claims that he did not file this Complaint or pay the fee, but rather, family members
did so on his behalf, without his knowledge or consent.  *See* Pl.'s Mot. to Amend, ECF No. 26.

Nos. 4 & 5.) The original Complaint (ECF No. 5) named as Defendants five employees of the Beaver County Jail ("Jail Defendants") where Plaintiff was and is currently incarcerated.

Subsequently, before any of the Jail Defendants responded to the original Complaint,[2] Plaintiff filed an Amended Complaint (ECF No. 8) on October 26, 2011, in which he named 35 new defendants, some of whom are attorneys retained by him in the past; others are government entities, businesses, and individuals with whom he has had dealings. On October 28, 2011, the Clerk's Office terminated each of the Jail Defendants since they were not named in the Amended Complaint. Spence has not filed any notices with the Clerk of Court indicating that he effectuated service of the Amended Complaint on the 35 newly added Defendants, as required by Federal Rule of Civil Procedure 4(*l*), although it appears that five of these Defendants did receive a copy of the Amended Complaint, as Desserrie Johnson, Sherri Johnson, Crystal Thompson, and Christopher Thompson filed an answer to the Amended Complaint (ECF Nos. 18, 19, & 20), and Elisa Carr filed a motion to dismiss (ECF No. 23).

On February 21, 2012, this Court entered an Order (ECF No. 25) striking the Amended Complaint (ECF No. 8) from the record and reinstating the original Complaint (ECF No. 5), and denying as moot the motion to dismiss filed by Defendant Carr (ECF No. 23). The Court found that:

> [T]he Original Complaint and the Amended Complaint are too varied in substance and form for the Court to accurately determine what Plaintiff intends to plead. Therefore, to allow Plaintiff to clarify his claims and the parties, the Court will strike the Amended Complaint and grant him leave to file a second amended complaint which names each and every defendant he wishes to sue, and includes all of the claims and supporting factual allegations to which he would like those defendants to respond and which he

---

[2] Plaintiff has not filed any notice with the Court indicating that he effectuated service on the Jail Defendants in accordance with Federal Rule of Civil Procedure 4(*l*).

> would like the Court to consider from this point forward. Upon striking the Amended Complaint, the Original Complaint is automatically reinstated unless and until Plaintiff files a Second Amended Complaint.

ECF No. 25 at 3. This Court further instructed Spence on the requirements of Rule 20(a)(2) for joining multiple defendants in a single lawsuit, that "while [he] may combine multiple unrelated claims against a single defendant in a lawsuit, he cannot combine unrelated claims against multiple defendants in one lawsuit. *Kedra v. City of Phila.,* 454 F.Supp. 652, 661 n. 6 (E.D. Pa. 1978)." *Id.* at 4. Spence was granted leave to file a second amended complaint which complied with the requirements of Rule 20(a)(2) on or before March 19, 2012 and was directed to effectuate service of the second amended complaint on every newly named defendant in accordance with Federal Rule of Civil Procedure 4 and file proof of service as required by Rule 4(*l*). (ECF No. 25 at 4-5.)

Instead of filing a second amended complaint as directed by the Court, thirty days after the deadline, on April 20, 2012, Spence filed a Motion to Amend (ECF No. 26), indicating that persons illegally assuming his power of attorney filed the original Complaint against the Jail Defendants without his knowledge or consent, and requesting the Court to "reorder" this case the way he sees fit and "amend and restructure" this civil action. On April 23, 2012, this Court entered a Text Order granting Plaintiff's motion to amend (ECF No. 26), noting that although it was inclined to dismiss this action based on his repeated failures to follow court orders, it would nonetheless allow Plaintiff to file a second amended complaint as he was proceeding pro se. The Court directed Spence to file a second amended complaint on or before May 23, 2012, in compliance with the previous Order dated 2/21/12 (ECF No. 25), and told him if he did not

comply that the Court would prepare a Report and Recommendation recommending that the case be dismissed.

On May 21, 2012, Spence filed a Second Amended Complaint (ECF No. 29) naming twenty-one Defendants, all but three of whom are attorneys, many of them criminal defense attorneys who allegedly represented him in the past. Despite this Court's order directing Spence to effectuate service on all of the newly named defendants and comply with proof of service requirements of Rule 4(*l*), Spence has not filed anything to indicate that he effectuated service on any of the defendants named in the Second Amended Complaint. On March 7, 2013, Defendant Alisa Carr, who was named in the Second Amended Complaint, filed a Motion to Dismiss the Second Amended Complaint (ECF No. 33). Thereafter, in an attempt to move this case along, despite Spence's obligation to effectuate service in a timely manner and failure to do so, the Court entered an Order (ECF No. 35) on March 7, 2013 directing Spence to provide the Court with a true and correct copy of the Second Amended Complaint, along with completed U.S. Marshal 285 forms and Notice of Lawsuit and Waiver of Service of Summons forms, for each named defendant no later than March 28, 2013. Spence was further told that failure to provide the copies and forms by the deadline may result in a recommendation to the district judge that the case be dismissed for failure to prosecute.

On March 25, 2013, Spence filed a motion for a 30-day extension (ECF No. 36) to comply with the March 7, 2013 Order (ECF No. 35), on the basis that he was placed in the Restricted Housing Unit on February 22, 2013 for thirty days. Spence also requested a copy of the docket in this civil action.

On April 15, 2013, the Court entered a text order setting a response/briefing schedule for Defendant Carr's motion to dismiss (ECF No. 33). The Court ordered Spence to file a response

and any supporting brief by April 29, 2013, and included with the text order a copy of the Second Amended Complaint and a copy of the docket, all of which were mailed to Spence on April 15, 2013. On April 29, 2013, instead of providing the Court with the required copies of his Second Amended Complaint and completed U.S. Marshals 285 forms and Notice of Waiver forms, Spence filed yet another motion for extension of time, this time requesting an additional 45 days to "craft a possible correct complaint and provide copies for each Defendant." ECF No. 37 at ¶13. In support of his motion, Spence submitted that he would not have funds available to make the necessary service copies of the Second Amended Complaint, Marshals forms and waiver notices until May 6, 2013. It was not clear to the Court whether Plaintiff was asking for a 45 day extension to file a Third Amended Complaint, or whether he was asking for a 45 day extension to provide the Court with the required service copies of the Second Amended Complaint (ECF No. 29), U.S. Marshals 285 Forms, and Notice of Lawsuit and Request for Waiver of Service of Summons Forms, and to respond to the motion to dismiss filed by Defendant Alisa Carr. Therefore, on May 14, 2013, the Court reluctantly entered an Order granting his motion (ECF No. 37),[3] and directed that:

> Plaintiff has until **June 13, 2013** to file either a Third Amended Complaint which complies with the Court's Order dated 2/21/12

---

[3] In the Order entered on May 14, 2013 (ECF No.38), the Court observed:

> As of May 14, 2013, 358 days have elapsed since Plaintiff filed his Second Amended Complaint without effectuating service. He has only been housed in the RHU for 30 of those days, so that only partially excuses his dilatory conduct in failing to effectuate service of the Second Amended Complaint within the 120 day time limit. Out of an abundance of caution, the Court will grant one last extension. However, Plaintiff is cautioned that failure to comply with the new deadline will result in the Court recommending dismissal of this lawsuit for failure to prosecute without any further notice.

ECF No. 38 at 3-4.

(ECF No. 25) **and** provide sufficient copies of the Third Amended Complaint, completed Marshals 285 Forms and Notice of Lawsuit and Request for Waiver of Service of Summons Forms **for each named Defendant, OR**, if Plaintiff wishes to proceed with his Second Amended Complaint, he has until **June 13, 2013** to (1) provide the Court with a copies of the Second Amended Complaint (ECF No. 29), a completed U.S. Marshals 285 Form and a completed Notice of Lawsuit and Request for Waiver of Service of Summons Form **for each named Defendant, and** (2) file a response and/or supporting brief to Defendant Alisa Carr's motion to dismiss (ECF No. 33). **NO FURTHER EXTENSIONS SHALL BE GRANTED**. If Plaintiff does not comply with this deadline, this Court will recommend that this lawsuit be dismissed for failure to prosecute **without any further notice to Plaintiff**.

ECF No. 38 at 4 (emphasis in original).

On June 14, 2013, Spence filed a motion requesting one last "30 day extension due to extreme circumstances." ECF No. 39. Plaintiff's reason for the extension this time is that he was again placed in the RHU on June 6, 2013, and although he sent out the complaint, U.S. Marshals forms and notice of waiver forms to be copied, the person who mailed them back did not put a return address on the package and the jail refused to accept the package. Pl.'s Mot. at ¶¶3-4, and Ex. A thereto. On June 18, 2013, the Court entered a text order granting Plaintiff's motion (ECF No. 39), and ordering:

> Plaintiff to file either a Third Amended Complaint which complies with the Court's Order dated 2/21/12 (ECF No. 25) and provide sufficient copies of the Third Amended Complaint, completed Marshals 285 Forms and Notice of Lawsuit and Request for Waiver of Service of Summons Forms for each named Defendant, OR, if Plaintiff wishes to proceed with his Second Amended Complaint, to (1) provide the Court with a copies of the Second Amended Complaint (ECF No. 29), a completed U.S. Marshals 285 Form and a completed Notice of Lawsuit and Request for Waiver of Service of Summons Form for each named Defendant, and (2) file a response and/or supporting brief to Defendant Alisa Carr's motion to dismiss (ECF No. 33). Extension granted to July 12, 2013. No further extensions.

Text Order dated 6/18/13. Spence missed the July 12, 2013 deadline and has not filed anything further with the Court in this civil action as of the date of this Report and Recommendation.

## B.     Legal Standard

Mr. Spence is proceeding *pro se* and as such, he is entitled to liberal construction of his submissions in federal court. This means that the Court must liberally construe the factual allegations of the complaint because *pro se* pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erikson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation omitted); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). In addition, the court should "'apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name.'" *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veterans Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting *Higgins*, 293 F.3d at 688). However, *pro se* litigants are not free to ignore the Federal Rules of Civil Procedure. *Pruden v. Long,* Civ. A. No. 3:CV-06-2007, 2006 WL 3325439, *1 (M.D.Pa. Oct. 24, 2006).

## C.     Motion to Dismiss by Defendant Carr

In his Second Amended Complaint, Spence appears to be asserting claims for alleged violations of his civil and constitutional rights, as well as possibly claims for legal malpractice, breach of contract, and conspiracy against fifteen criminal defense attorneys who allegedly represented him at various times. Spence also asserts various claims against the three attorneys who served as arbitrators to resolve a fee dispute between Spence and his former Attorney Stanton Levenson, also a named Defendant herein. Defendant Carr served as one of three

arbitrators[4] on the Allegheny County Fee Dispute Board who presided over the fee dispute between Spence and Attorney Levenson. (2nd Am. Compl. ¶106.) It appears that Spence is asserting a conspiracy claim against Defendant Carr for her handling of his fee dispute and, possibly, a claim for alleged violations of his constitutional rights.[5] Defendant Carr has moved to dismiss the claims against her on several grounds.

### 1. *Rooker-Feldman* Doctrine

Initially, Defendant Carr submits that this Court lacks subject matter jurisdiction over Spence's claims as he is seeking a review of a state court adjudication, which is barred by *Rooker-Feldman*.[6] Defendant Carr contends that a close review of the Second Amended Complaint reveals that, in essence, Spence is attempting to challenge the arbitration panel's decision against him, which he cannot do in this federal action. In support of her argument, Defendant Carr relies on *Egnotovich v. Greenfield Township Sewer Authority,* No. 4:CV 05-

---

[4] The panel of three arbitrators consisted of Attorneys Alisa Carr, Mark Sindler, and William Pietragallo III, all of whom are named Defendants in this civil action.

[5] In the section of the Second Amended Complaint entitled "Legal Claims" (2nd Am. Compl. ¶¶137-150), Spence does not assert any claims against Defendant Carr specifically, but does state in conclusory fashion that "all defendants" violated various constitutional rights in a couple of paragraphs. As explained below, these conclusory allegations do not meet the pleading requirements under Rule 12(b)(6) to state a claim against Defendant Carr.

[6] The *Rooker-Feldman* doctrine is a judicially-created doctrine that bars lower federal courts from reviewing certain state court actions. The doctrine originated from two Supreme Court opinions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Specifically, the *Rooker-Feldman* doctrine holds that a United States District Court has no subject matter jurisdiction to review final judgments of a state court, because only the Supreme Court has jurisdiction to review state court judgments under 28 U.S.C. § 1257. *Feldman*, 460 U.S. at 482. "The *Rooker-Feldman* doctrine is based on the statutory foundation of 28 U.S.C. § 1257 and the well-settled understanding that the Supreme Court of the United States, and not the lower federal courts, has jurisdiction to review a state court decision." *Parkview Assocs. P'ship v. City of Lebanon*, 225 F.3d 321, 324 (3d Cir.2000); *see also Gulla v. North Strabane Twp.*, 146 F.3d 168, 171 (3d Cir.1998). This doctrine applies even where the challenges to the state court judgment allege that the state court's action was unconstitutional, such as a deprivation of due process and equal protection rights. *Feldman,* 460 U.S. at 485-86 (citation omitted).

1818, 2006 U.S. Dist. LEXIS 25966, at *8-9 (M.D.Pa. May 3, 2006), which she cites for the proposition that "Federal courts do not have jurisdiction over what are, in essence, appeals from a state court adjudication if the claims are 'inextricably intertwined' with a state courts' judgment." However, the "inextricably intertwined" standard has since been rejected by the Court of Appeals for this Circuit and replaced with a four-part test. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 166 (3d Cir. 2010).

In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, the Supreme Court emphasized the narrowness of the doctrine and held that *Rooker-Feldman* is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejections of those judgments." 544 U.S. 280, 284 (2005); *see also Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 544 (3d Cir.2006) (citing *Exxon Mobil, id.*).[7] The Supreme Court in *Exxon Mobile* further clarified that just because a federal claim was previously adjudicated in state court does not trigger the application of *Rooker-Feldman*. Thus, the court must determine if the plaintiff in the federal lawsuit has presented "some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." *Exxon Mobil*, 544 U.S. at 293 (citations omitted). If the court finds that an independent claim has been presented, then jurisdiction exists and state law controls whether the defendant prevails on preclusion principles. *Id*. As the Supreme Court pointed out, "[p]reclusion, of course, is not a jurisdictional matter." *Id*. (citing FED. R. CIV. P. 8(c)).

---

[7] The *Rooker-Feldman* doctrine also applies to final decisions of lower state courts. *Walker v. Horn*, 385 F.3d 321, 329 (3d Cir. 2004) (citation omitted).

Based on the Supreme Court's holding in *Exxon Mobil,* the court of appeals in *Great Western Mining* enunciated the following four-part test:

> [T]here are four requirements that must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments"; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.

615 F.3d at 166 (quoting *Exxon Mobil*, 544 U.S. at 284). Furthermore, in formulating the four-part test, the court of appeals determined that the phrase "inextricably intertwined" neither created an additional legal test nor expanded the scope of the doctrine beyond challenges to state-court judgments. *Id*. at 170. Rather, "[t]he purpose of the [phrase had been] to highlight that a challenge to a judgment is barred even if the claim forming the basis of the challenge was not raised in the state proceedings." *Id*. (alteration to original) (citing *Bolden v. City of Topeka, Kan*., 441 F.3d 1129, 1141 (10th Cir. 2006)). Hence, the court of appeals opined that the phrase is no more than "a descriptive label attached to claims that meet the requirements outlined in *Exxon Mobil*." *Id*. at 170 (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 87 (2d Cir. 2005)).

Defendant Carr has not applied the four-part test in *Great Western Mining* to the facts of this case, and this Court will not attempt to do so *sua sponte*. Even if Carr had attempted to apply the *Great Western Mining* test to the case at bar, her argument would likely have fallen short. First, due to the lack of any factual foundation and clarity in the Second Amended Complaint against Defendant Carr, it would be impossible to discern whether Spence is merely attacking the arbitrators' decisions as incorrect or unconstitutional, which would be barred by *Rooker-Feldman,* or claiming that the arbitrators violated some independent right, such as the

right to an impartial forum under the due process clause, which would not be barred by *Rooker-Feldman*.[8]   *Great Western Mining,* 615 F.3d at 172.   Second, the court of appeals in *Great Western Mining* held that because the plaintiff was claiming that attorneys and members of the judiciary conspired to reach a predetermined outcome in its case, plaintiff's claim for damages was based on an alleged independent violation of its constitutional right under the due process clause and therefore the *Rooker-Feldman* doctrine did not bar plaintiff's claims. *Id.* at 172-73.

In the case at bar, the Court cannot conclude, based on the Second Amended Complaint and the court of appeals' holding in *Great Western Mining,* that *Rooker-Feldman* would bar Plaintiff's claims against Defendant Carr.   Accordingly, the Court turns to Defendant Carr's other arguments.

### 2.      Failure to State a Claim under Rule 12(b)(6)

Next, Defendant Carr moves to dismiss on the basis that the Second Amended Complaint fails to state a claim upon which relief maybe granted against her under Federal Rule of Civil Procedure 12(b)(6).   A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).   The court of appeals has expounded on this standard in light of its decision in *Phillips v. County of Allegheny,* 515 F.3d

---

[8] The Court notes that Spence has alleged that the arbitrators "just didn't err but rather done a favor for Atty. Levenson" (2nd Am. Compl. ¶106), which may infer bias on their part.

224 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and the Supreme Court's decision in *Iqbal*:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id.* at 1949-50; *see also Twombly,* 505 U.S. at 555, & n. 3.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In making this determination, the court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985).

The Second Amended Complaint contains few allegations implicating Defendant Carr. Of the 162 number paragraphs in that complaint, only nine of those paragraphs either mention Defendant Carr specifically or refer generally to the "arbitrators." *See* 2nd Am. Compl. ¶¶19, 31, 73, 83,[9] 106, 108-09, 153, & 155. Spence alleges that Defendant Carr is an attorney and arbitrator. (*Id.* at ¶19.) In conclusory fashion, Spence alleges that 19 of the Defendants, including Carr, broke rules of professional conduct (*id.* at ¶31), and that 17 of the Defendants, including Carr, are racist (*id.* at ¶73). Spence does not allege any facts to support these conclusions, nor does he allege any specific acts of misconduct by Defendant Carr. Rather, Spence makes general, conclusory allegations against the arbitrators collectively, to wit that:

---

[9] The Second Amended Complaint contains two paragraphs numbered "83." The Court's citation to ¶83 herein refers to the second paragraph 83 appearing at page 39 of ECF No. 29.

(1) the arbitrators "didn't just err but rather done a favor for Atty. Levenson; it will show its blatantness" (*id.* at ¶106);

(2) "These arbitrators posed seriously bodily harm against Mr. Spence" (*id.*);

(3) the fee agreement was reviewed by the arbitrators as to signatures (*id.* at ¶83);

(4) after hearing testimony and viewing the evidence, "these arbitrators wrote 'Binding a nonrefundable retainer of $50,000 Mr. Levenson provided representation that was sought, & was terminated by the client (Michele Alexander). Although it appears that Mr. Levenson did not provide a monthly statement as required by the agreement, he is nonetheless entitled to the retainer since it was non-refundable, & it does not appear to be clearly excessive'" (*id.* at ¶83);

(5) Defendant Pietragallo, one of the arbitrators, found that Michele Alexander was the client and Defendants Carr and Sindler agreed with him (*id.* at ¶109; and

(6) the "arbitrators were part of a multimillion dollar conspiracy which they were told @ beginning of hearing, if they were unfair that Mr. Spence was going to persue (sic) futher (sic)." (*id.* at 108.)

Based on the above allegations, Spence requests compensatory and punitive damages against Carr in the amounts of $50,000 and $25,000, respectively. (*Id.* at ¶¶153 & 155.) He also seeks an injunction against Carr and the other Defendants (2^nd Am. Compl. ¶152), ordering them to stop spreading "fictitious rumors" about him. However, there is no factual basis in the Second Amended Complaint to support that Carr was engaging in such conduct.

Defendant Carr argues that even when liberally construing these allegations, Spence has failed to show an entitlement to relief or provide Carr with fair notice of the grounds upon which his claims rest, but rather, has asserted vague, ambiguous and incomprehensible allegations. Carr further submits that Spence has failed to identify which of his civil and/or constitutional

rights she allegedly violated or to allege any facts to support such claims. Def. Carr's Br. in Supp. of Mot. to Dismiss at 5-6 (ECF No. 34). As such, Carr argues that the Second Amended Complaint should be dismissed pursuant to Rule 12(b)(6). The Court agrees with Defendant Carr.

Spence's allegations with regard to Defendant Carr fail to show a plausible claim for relief against her. Spence has not alleged any facts to establish a Section 1983 conspiracy involving Defendant Carr, nor has he even identified any constitutional right that Defendant Carr violated in perpetuating the alleged conspiracy. As such, his Second Amended Complaint is fatally deficient under *Twombly* and *Iqbal.* Accordingly, the Court recommends that Defendant Carr's motion to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6) be granted.[10]

### 3. Eleventh Amendment/ Quasi –Judicial Immunity Immunity

The final argument advanced by Defendant Carr in support of dismissal is that Spence's claims for alleged violations of his constitutional and/or civil rights fail as a matter of law because they are barred by the Eleventh Amendment to the United States Constitution. The Court agrees with Defendant Carr that she is immune from suit.

The Eleventh Amendment of the United States Constitution grants immunity to states from suits in federal court and specifically provides that, "the judicial power of the United States shall not be construed to extend to any suit in equity or law, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. 11. *See also Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978)). The Eleventh Amendment has been interpreted

---

[10] Moreover, leave to file an amended complaint would be futile and inequitable. Spence has already filed two amended complaints and when given leave to file a third amended complaint, he failed to do so. *See* discussion *infra* in Part D.

"to make states generally immune by suit from private parties in federal court," and applies also to "state agencies and departments." *MCI Telecomm'n Corp. v. Bell Atlantic of Pa.*, 271 F.3d 491, 503 (3d Cir. 2001); *Laskaris*, 661 F.2d at 25 (citing *Pugh*, *supra*; *Mt. Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 280 (1977)).  This immunity applies even to claims seeking injunctive relief.  *Laskaris*, 661 F.2d at 25; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (holding Eleventh Amendment immunity applies "regardless of the nature of the relief sought.").

Moreover, a suit against a state official acting within the scope of their duties is in reality a suit against the state itself and thus, is likewise barred by the Eleventh Amendment.  *Kentucky v. Graham,* 473 U.S. 159, 166-68 (1985).  Pennsylvania statutory law provides that "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."  1 PA. CONS. STAT. ANN. § 2310; see also 42 PA. CONS. STAT. ANN. § 8521.  The Pennsylvania statute further provides that the term "Commonwealth government" includes the "courts and other officers or agencies of the unified judicial system, . . .."  42 PA. CONS. STAT. ANN. §102.  Arbitration panels have been found to constitute an agency of the state for purposes of Eleventh Amendment immunity.  *See Egnotovich,* 2006 U.S. Dist. LEXIS 25966, at *6 ("a suit in federal court against an arbitrator in state judicial matter in the arbitrator's official capacity is barred by the Eleventh Amendment of the United States Constitution because it is a suit against the State.").

There are three exceptions to 11th Amendment immunity which will permit suit against a state or state agency: (1) congressional abrogation; (2) state waiver; and (3) suits against individual state officers for prospective relief to end ongoing violations of federal law.  *MCI*

*Telecomm'n*, 271 F.3d at 503.  The first exception is not applicable here as there has been no congressional abrogation of Eleventh Amendment immunity with regard to Section 1983 claims.[11]  As to the second exception, Pennsylvania has not waived its immunity, as it has, by statute, specifically withheld consent to suit in federal court.  42 PA. CONS. STAT. ANN. § 8521(b); *Laskaris*, 661 F.2d at 25.

Nor is the third exception applicable to the case at bar.  The Eleventh Amendment bar also applies to actions in federal court against state officials acting in their official capacity for money damages or back pay, as such retrospective relief would be paid out of the state treasury.  *Laskaris*, 661 F.2d at 26 (citing *Edelman v. Jordan*, 415 U.S. 651 (1974)).  However, the Supreme Court has noted an exception to this rule where "suits against individual state officers [are] for prospective injunctive and declaratory relief to end an ongoing violation of federal law."  *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (citing *MCI Telecomm'n Corp. v. Bell Atlantic-Pa.*, 271 F.3d 491, 503 (3d Cir. 2001)).  This exception is commonly referred to as the doctrine of *Ex Parte Young*, 209 U.S. 123, 159-60 (1908).  *See Pa. Fed'n of Sportsmen's Clubs*, 297 F.3d at 323.  The Supreme Court has narrowly applied this exception, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984), and indeed, has declined to apply the exception to relief styled as prospective relief but which, in actuality, seeks compensation for a past injury by a state official, *Green v. Mansour*, 474 U.S. 64, 73 (1985).

In the case at bar, Spence has expressly requested compensatory and punitive damages from Carr.  *See* 2nd Am. Compl. at ¶¶153 & 155.  In addition, Spence has also requested

---

[11] Although the scope of the Eleventh Amendment is not the same as that of Section 1983, the Supreme Court has determined that Congress did not intend for Section 1983 to overcome the sovereign immunity of states embodied in the Eleventh Amendment.  *Will v. Mich. Dep't State Police,* 491 U.S. 58, 66-67 (1989).

injunctive relief against nineteen of the twenty-one Defendants, including Carr, which orders them to "stop spreading fictious rumors about [him], causing fear and danger to [him] and [his] family." 2nd Am. Compl. ¶152. There is simply no factual foundation, however, for this relief against Defendant Carr in the Second Amended Complaint, i.e, Spence has not alleged she was spreading rumors in the first instance. Nor would the requested relief put an end to an ongoing violation of *federal law* by Carr—"spreading rumors" does not give rise to a violation of a recognized civil or constitutional right. Therefore, the Court declines to apply the *Ex Parte Young* exception to the claimed "prospective relief" against Carr in paragraph 152 when, in actuality, the Second Amended Complaint shows he is seeking compensation from her for injuries he allegedly sustained as a result of Carr's performance of her duties as an arbitrator.

Accordingly, the exception of *Ex Parte Young* is not applicable here and the Eleventh Amendment bars Plaintiff's claims against Defendant Carr in her official capacity.

To the extent Spence is suing Carr for damages in her individual capacity, the Court finds she is immune from suit on the basis of quasi-judicial immunity. It is well settled that a "judge cannot be sued civilly for any act which he does in the performance of his duties, even if the act was deliberate and malicious." *Cahn v. Int'l Ladies' Garment Union*, 203 F.Supp. 191, 193 (E.D.Pa. 1962) (citing *Bradley v. Fisher*, 80 U.S. 335, 347 (1872); *Allen v. Biggs*, 62 F.Supp. 229, 230 (E.D.Pa. 1945)), *aff'd* 311 F.2d 113 (3d Cir. 1962). The district court in *Cahn* observed that "[t]his rule of immunity extends to quasijudicial officials and those so closely associated with the judicial process that their protection from harassment is necessary in order to protect the judicial process." 203 F.Supp. at 193 (citing *Cooper v. O'Connor*, 99 F.2d 135, 141 (D.C.Cir.1938); *Hohensee v. Goon Squad*, 171 F.Supp. 562, 568-69 (M.D.Pa.1959)). The rationale for this precept is that "impos[ing] civil liability on judges in the performance of their

civil duties would produce utter chaos in the judicial system." *Id.* (citing *Ginsberg v. Stern*, 125 F.Supp. 596, 602 (W.D.Pa.1954), *aff'd on other grounds*, 225 F.2d 245 (3rd Cir.1955)).

The court of appeals in *Cahn* extended this absolute immunity to "quasi-judicial" officials, including arbitrators. 311 F.2d at 114-15. *See also Perry v. Dunlavey,* No. 1:11-cv-234, 2012 WL 3648108, at *5 (W.D.Pa. Aug. 1, 2012) (citing *Garland v. U.S. Airways, Inc.*, Civ. A. No. 05-140, 2007 WL 895139, at *4 (W.D.Pa. Mar. 21, 2007) (holding that pursuant to 28 U.S.C. §1915(e)(2)(B), plaintiff's claims against an arbitration board must be dismissed as the board was "entitled to absolute arbitral immunity as a matter of law"); *Raitport v. Provident Nat'l Bank,* 451 F.Supp. 522, 527 (E.D.Pa. 1978). Moreover, quasi-judicial immunity applies to an arbitrator regardless of whether she is appointed by the court or by agreement of the parties. *Cahn,* 203 F.Supp. at 194. In either event, the arbitrator is "empowered to resolve disputes between [the parties and thus, is] performing a 'quasi-judicial' function and is clothed with an immunity, analogous to judicial immunity, against actions brought by either of the parties arising out of the performance of his duties." *Id.* (citing *Craviolini v. Scholer & Fuller Assoc. Architects,* 357 P.2d 611, 613 (Ariz. 1960)).

Judicial immunity may be defeated in only two situations: (1) "'a judge is not immune from liability for nonjudicial actions, *i.e*, actions not taken in the judge's judicial capacity[,]'" and (2) "'a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.'" *Gallas v. Supreme Ct. of Pa.,* 211 F.3d 760, 768 (3d Cir. 2000) (quoting *Mireles v. Waco,* 502 U.S. 9, 11-12 (1991). Neither situation is implicated here in Plaintiff's Second Amended Complaint.

It is clear from a review of the Second Amended Complaint that the allegations directed against Defendant Carr relate specifically to the performance of her quasi-judicial duties as an

arbitrator.  Spence takes issue with the arbitrators' acts in conducting the fee dispute hearing and their subsequent ruling—all acts performed in a quasi-judicial capacity, and Spence does not challenge the arbitrators' jurisdiction to hear the fee dispute.  Indeed, the complaint alleges that these arbitrators were members of the Allegheny County Fee Dispute Board and conducted a hearing to resolve a fee dispute. The arbitrators clearly possessed subject matter jurisdiction and issued a ruling that was within their jurisdiction.  Therefore, Defendant Carr is entitled to quasi-judicial immunity from Spence's claims against her in her individual, as well as official capacity.

Accordingly, the Court recommends that Defendant Carr's motion to dismiss be granted and that the Second Amended Complaint be dismissed with prejudice as to Defendant Carr.[12]

### D.    <u>Failure to Prosecute</u>

As to the remaining claims and Defendants, this Court recommends that they be dismissed with prejudice for failure to prosecute.  Federal Rule of Civil Procedure 41(b) provides as follows:

> (b) Involuntary Dismissal; Effect.  If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it.  Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b).  Although there is no pending motion under Rule 41(b), the Court possesses the authority to dismiss *sua sponte* a civil action for failure to prosecute.  *Williams v. Pa. Dep't of Corrections at SCI Camp Hill,* Civ. No. 3:CV-12-2440, 2013 WL 3863959, at *1 (M.D.Pa. July 23, 2013).  In *Williams,* the district court observed:

---

[12] In light of this Court's finding that Defendant Carr is entitled to quasi-judicial immunity, it would be futile to allow Spence leave to amend his complaint yet a third time.

> The United States Supreme Court has held that "[t]he authority of a court to dismiss sua sponte for lack of prosecution has generally been considered an 'inherent power, governed not by rule or statue but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 631, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962). "Such a dismissal is deemed to be an adjudication on the merits, barring any further action between the parties." *Iseley v. Bitner*, 216 F. App'x 252, 255 (3d Cir.2007).

*Id.* The Supreme Court recognized in *Link* that where a plaintiff has failed to prosecute his or her case, the power to invoke the sanction of dismissal with prejudice "is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." 370 U.S. at 629-30. In that case, the Supreme Court affirmed the sua sponte dismissal of a complaint where counsel for the plaintiff had a history of delay in the case and had failed to appear at a scheduled pretrial conference. *Id.* at 628-29.

In *Link,* as in the case at bar, there was no motion to dismiss under Rule 41(b) filed by a defendant. *Id.* at 630. In rejecting the petitioner's argument that Rule 41(b) prohibited involuntary dismissals for failure to prosecute except upon motion by the defendant, the Supreme Court found that "[n]either the permissive language of [Rule 41(b)]—which merely authorizes a motion by the defendant—nor its policy requires us to conclude that it was the purpose of the Rule to abrogate the power of courts, acting on their own initiative, to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief." *Id.*

Usually, when determining sua sponte whether to dismiss a case failure to prosecute, the Court must consider and balance the following factors in light of the record in the case:

> (1) The extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4)

> whether the conduct of the party or the attorney was willful or in
> bad faith; (5) the effectiveness of sanctions other than dismissal,
> which entails an analysis of alternative sanctions; and (6) the
> meritoriousness of the claim or defense.

*Poulis v. State Farm Fire and Cas. Co*., 747 F.2d 863, 868 (3d Cir. 1984) (emphasis in original).

"When a litigant's conduct makes adjudication of the case impossible, however, such balancing under *Poulis* is unnecessary." *Iseley,* 216 F. App'x at 255 (citing *Guyer v. Beard*, 907 F.2d 1424, 1429-30 (3d Cir.1990); *Spain v. Gallegos*, 26 F.3d 439, 454-55 (3d Cir.1994)). The Court finds that such is the case here with Mr. Spence.

Spence has repeatedly failed to comply with this Court's orders and was afforded numerous chances to remedy the noted deficiencies, but failed to do so. This case is almost two years old without any perceptible progress due mainly to Spence's repeated dilatory conduct. Accordingly, the Court recommends that the Second Amended Complaint be dismissed with prejudice for failure to prosecute.

### E. Conclusion

For the reasons set forth above, the Court respectfully recommends that the Motion to Dismiss filed by Defendant Alisa N. Carr (ECF No. 33) be granted and the claims against her be dismissed with prejudice. It is further recommended that Plaintiff's Second Amended Complaint (ECF No. 29) be dismissed with prejudice as to all remaining Defendants for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections. Any party opposing the

objections shall have fourteen (14) days from the date of service of objections to respond thereto.

Failure to file timely objections will constitute a waiver of any appellate rights.

Dated:  August 19, 2013                              BY THE COURT:

                                                     _____
                                                     LISA PUPO LENIHAN
                                                     Chief U.S. Magistrate Judge


cc:     Robert Russell Spence, Jr.
        Beaver County Jail
        6000 Woodlawn Road
        Beaver, PA  15001